# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

GREGORY BRACEY,
      Plaintiff,

      v.

WATERBURY BOARD OF
EDUCATION,
      Defendant.

No. 3:17-cv-1100 (SRU)

## RULING ON MOTION FOR SUMMARY JUDGMENT

Gregory Bracey, an African-American substitute teacher, has filed the instant suit against

his employer, Waterbury Board of Education ("WBOE"), asserting violations under Title VII of

the Civil Rights Act, 42 U.S.C. § 2000e, et seq. Bracey principally alleges that WBOE

discriminated and retaliated against him by terminating his teaching assignments at Woodrow

Wilson Elementary School ("Woodrow Wilson") and Carrington Elementary School

("Carrington"), and by failing to hire him for various teaching positions.

Currently before the court is WBOE's motion for summary judgment on all counts (doc.

no. 39). For the reasons that follow, summary judgment is **denied** with respect to Bracey's

discrimination claim arising out of his termination from Woodrow Wilson and **granted** with

respect to the remaining claims.

## I.      Standard of Review

A court shall grant summary judgment when the movant demonstrates that there is no

genuine dispute with respect to any material fact and that the movant is entitled to judgment as a

matter of law. Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256

(1986). When reviewing a summary judgment motion, a court must construe the facts of record

in the light most favorable to the nonmoving party and must resolve all ambiguities and draw all reasonable inferences against the moving party. *Anderson*, 477 U.S. at 255; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59 (1970).

When a motion for summary judgment is properly supported by documentary and testimonial evidence, however, the nonmoving party may not rest upon the mere allegations or denials of the pleadings and instead must present sufficient probative evidence to establish a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986); *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995). To present a "genuine" issue of material fact, there must be contradictory evidence "such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.*

If the nonmoving party has failed to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof at trial, then summary judgment is appropriate. *Celotex*, 477 U.S. at 322. In that instance, "there can be 'no genuine issue as to any material fact,' because a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 322–23; *accord Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995) (holding that a movant's burden is satisfied if he can point to an absence of evidence to support an essential element of the nonmoving party's claim).

## II.    Background[1]

A.    Factual Overview

Bracey applied to be a qualified and certified substitute teacher through the Applitrack software system, which is used by the Department of Education to manage available positions and applications.[2]  Def.'s Local Rule 56(a)1 Statement of Facts, Doc. No. 39-10, at ¶¶ 22, 26. On his application, Bracey designated a preference for every school in the Waterbury school system, and for both short and long-term substitute positions.  *Id*. at ¶ 28.  Bracey completed the application process and was deemed eligible for assignment as a substitute.  *Id*. at ¶ 30.  As a result, he was placed on the contact list for both short-term and long-term substitute assignments. *See id.*[3]

During the 2015–16 school year, Bracey was assigned by the WBOE to Woodrow Wilson as a long-term substitute teacher, filling in the vacancy of Jennifer Deeley, a third-grade teacher who was promoted to the position of assistant principal.  Pl. Local Rule 56(a)2 Statement of Facts, Doc. No. 44, at ¶¶ 2, 3.  The principal of Woodrow Wilson at the time was Jennifer Rosser.  *Id*. at ¶ 2.

Approximately four months into Bracey's tenure at Woodrow Wilson, Ressie Parker, an African-American special education teacher at the school, heard Rosser opine that Bracey was

---

[1] The facts are primarily drawn from the parties' Local Rule 56(a)1 and Local Rule 56(a)2 Statements of Fact.  Unless otherwise indicated, the facts are agreed upon.

[2] There are two types of substitute teachers—certificated and noncertified—and several categories, including daily, long-term, and building.  Def.'s Local Rule 56(a)1 Statement of Facts, at ¶¶ 21, 24.

[3] A computerized online software program, known as AESOP/FRONTLINE, manages teacher absences and coordinates the assignment of short and long-term substitute positions.  *Id.* at ¶ 31. Both short and long-term substitute positions are posted on the software system, to which every qualified substitute teacher has access.  *Id.* at ¶ 31.  The AESOP/FRONTLINE system can also randomly call individuals who are on the substitute-approved list when there is a vacancy.  *Id.* at ¶ 33.  The system will automatically and randomly select individuals from the approved list and call one after another until the system locates an individual willing to accept the position.  *Id.* Once a teacher accepts the assignment, the position would then be closed out and no longer available to anyone else. *Id.*

"not a good fit"—a comment which Parker viewed as discriminatory.[4]  *Id*. at ¶ 9; Parker

Deposition Tr., Doc. No. 49, at 307–08, 320.  Later that week, on March 23, 2016, Bracey was

terminated at Rosser's direction.  *See* Rosser Deposition Tr., Doc. No. 49, at 405.

The parties dispute the reasons behind Rosser's decision to end Bracey's assignment.

Bracey contends that his "termination" by Rosser was based solely on his race, whereas Rosser

maintains that the decision to give Bracey a "different assignment" was prompted by complaints

that Deeley had been receiving from parents regarding Bracey's teaching methods.  Rosser Aff.,

Doc. No. 39-2, at ¶¶ 5–7.  Those complaints centered around Bracey's "noncompliance with the

standard curriculum" and specifically his discussion about issues such as the civil war, slavery,

and race.  *Id*. at ¶ 5.  As support, Rosser points to a list identifying the names of the students

whose parents had levelled such complaints to Deeley, which Deeley allegedly prepared at

Rosser's request.  *See id*. at ¶¶ 6, 7; *see also* Ex. 1 to Rosser Aff., Doc. No. 39-2, at 6 (exhibit

with list of names).

On March 29, 2016. Bracey received an assignment as a long-term substitute teacher at

the Duggan School for the remainder of the 2015–2016 school year.  *See* Bracey Aff., Doc. No.

53, at ¶¶ 4, 5; Def.'s Local Rule 56(a)1 Statement of Facts, Doc. No. 39-10, at ¶ 10.

_____

[4] During her deposition, and as elaborated in her affidavit, Parker also noted that Rosser engaged, or was alleged to have engaged, in the following actions at unspecified times at Woodrow Wilson: (1) Rosser regularly sent only black paraprofessionals to assist Parker with her special education class, which she justified on the ground that "you people [African-American individuals] have the requisite skill set to deal effectively with this particular clientele," Pl's Local Rule 56(a)2 Statement of Facts, at ¶ 11; Parker Deposition Tr., Doc. No. 49, at 190; (2) Rosser repeatedly called an African-American janitor a "boy" and asked him to "muck out" the bathroom, Pl's Local Rule 56(a)2 Statement of Facts, at ¶ 12; (3) Rosser removed an African-American paraprofessional, Tracy Trotman, from Parker's special education class after an evaluation, even though the Parker did not believe there was reason for Trotman to be removed and even though Trotman had been performing satisfactorily, *id*. at ¶ 13; and (4) Rosser remarked that it was "okay" for a Hispanic student to urinate outside the school beside by a tree because that is what "their culture does," *id*. at ¶ 15.  Moreover, Rosser stated in her deposition that she had also recommended the termination of a substitute teacher who was female and of Egyptian national origin.  *Id*. at ¶ 17.

Bracey submitted a number of applications to other positions throughout that year and thereafter. On April 7, 2016, Bracey submitted an application for Job #512 (Elementary School Teacher Districtwide), indicating an interest in the following positions: Elementary School Teaching Position, Middle School Math Teacher, Substitute Teacher, and Summer School Teacher. Def.'s Local Rule 56(a)1 Statement of Facts, at ¶ 43. At a career fair held on April 26, 2016, Bracey was interviewed by Diurca Tomasella and Mary Perugini; both interviewers assigned Bracey 13 out of a possible 25 points based on his interview. *Id.* at ¶¶ 44–45.

On April 29, 2016, Bracey applied for Job #512, as well as for the positions of Middle School Math Teacher, Substitute Teacher, and Summer School Teacher. *Id*. at ¶ 46. On June 9, 2016, Bracey applied for Job #512 and for Job #793 (Summer Teaching Program). *Id*. at ¶ 47. On June 30, 2016, Bracey applied for Job #512, Job #820 (Computer Education Teacher at the Duggan School), and Job #812 (Elementary Science Teacher), as well as a summer school position. *Id*. at ¶ 48.

On July 7, 2016, Bracey was interviewed by Noreen Buckley, among others, for "any available Elementary School position for which he was [c]ertified, K through 6." *Id.* at ¶ 52. According to Buckley's affidavit, Bracey was not offered a full-time position as an elementary teacher because he gave "poor responses to the questions asked during his interview, . . . scored very low in his overall interview, was not knowledgeable of the Common Core standards, lesson design, classroom management and did not display strong parent engagement skills." Buckley Aff., Doc. No. 39-6, at ¶ 6.

On or about July 11, 2016, Bracey interviewed, again unsuccessfully, for full-time school teaching positions at the John G. Gilmartin School and Generali Elementary School. Def.'s Local Rule 56(a)1 Statement of Facts, Doc. No. 39-10, at ¶¶ 49, 51; Baim Aff., Doc. No. 39-5, at

¶ 3.  Pamela Baim, among others, interviewed Bracey for both positions.  Baim Aff., Doc. No.

39-5, at ¶ 3.  According to Baim's affidavit, Bracey was not offered a position at either school

because he was not knowledgeable about the Common Core standards or the State of

Connecticut educational standards.  *Id*. at ¶ 24.  It was also reported that he had poor classroom

management and refused help when he previously served as a substitute teacher at Generali

Elementary School.  *Id*. at ¶¶ 4, 5.

On October 3, 2016, Bracey was assigned by the substitute office to Carrington to serve a

long-term substitute teaching assignment, filling a vacancy for then-fourth grade teacher Rachel

Rodriguez.  Def.'s Local Rule 56(a)1 Statement of Facts, at ¶¶ 13, 14.  Karen Renna was

Carrington's principal at the time.  *See id*. at ¶ 12.

Toward the end of his first day at Carrington, Renna informed Bracey that "personnel

made a mistake."  Bracey Deposition Tr., Doc. No. 49, at 154.  His position at Carrington was

thereafter terminated.  *See* Bracey Aff., Doc. No. 49, at 410, at ¶ 10; Bracey Deposition Tr., Doc.

No. 49, 153–60, 171.

Again, both parties offer differing accounts of the events leading up to the termination.

Renna maintains that she and Rodriguez, who was present on Bracey's first day to help facilitate

the transition, shared concerns about Bracey's ability to perform as a fourth-grade substitute

teacher.  Renna Aff., Doc. No. 39-1. at ¶¶ 4, 7.  Of particular concern to Renna was her

observation of Bracey sitting in the back of the classroom, reading a novel that was "not

educational related material," and not engaging with the students or observing Rodriguez.  *Id*. at

¶ 5.  Renna also noted that she later questioned Bracey about his knowledge of the reading

program, small group instruction, the fourth-grade curriculum, and classroom management

strategies; based on his responses, Renna assessed Bracey to not possess "much knowledge" in those areas. *Id*. at ¶ 6.

According to Renna, Bracey also refused to meet with Rodriguez during lunch to work on the transition and did not want to review "anything" about the classroom with her. *Id*. at ¶ 7. In addition, Bracey was insistent on receiving a contract for a long-term substitute teaching position. *Id*. at ¶ 8. After Renna stated that she did not have the authority to enter into such a contract, Bracey grew upset and agitated. *Id*.

Bracey denies those events. He avers that he spoke to Renna only twice on his first day at Carrington: when he arrived and when he departed. Bracey Aff., Doc. No. 49, at ¶ 4. He asserts that he "felt discriminated against, due to [his] color and race, by Principal Reena upon meeting her." *Id*. at ¶ 9. He also denies meeting or speaking with Rodriguez that day, being informed of any transitional period, or insisting on a long-term contract. *Id*. at ¶¶ 3, 5

On January 27, 2017, Bracey filed a discrimination complaint with the EEOC, which was sent to and received by the WBOE. Doc. No. 49, at 4, 13. Five months later, on May 28, 2017, he applied for two other positions—a strength/conditioning coaching position and a computer teacher position—and was not offered either position. *See* Def.'s Local Rule 56(a)1 Statement of Facts, at ¶ 56.

B. Procedural History

On July 3, 2017, Bracey filed the instant complaint against WBOE. *See* Compl., Doc. No. 1. WBOE answered on October 12, 2017, and an amended complaint was filed thereafter on May 30, 2019. Am. Compl., Doc. No. 35.

As outlined in the amended complaint, Bracey asserts claims for disparate treatment and a hostile work environment under Title VII of the Civil Rights Act, and for retaliation for filing

an EEOC complaint against WBOE.  *See generally id*.  He seeks compensatory damages and immediate assignment to a permanent position as a teacher within Waterbury Public Schools, as well as back pay and attorneys' fees.  *Id*. at 6.

 Following the close of discovery, WBOE moved for summary judgment on all counts, which Bracey opposed.  A hearing was held on January 10, 2020.

## III.    Discussion

### A.  Title VII of the Civil Rights Act

Title VII claims are analyzed under the familiar burden-shifting framework set forth in *McDonnell Douglas Corp v. Green*, 411 U.S. 792 (1973).  *See Graham v. Long Island R.R.*, 230 F.3d 34, 38 (2d Cir. 2000); *Vivenzio v. City of Syracuse*, 611 F.3d 98, 106 (2d Cir. 2010).  In order to survive a motion for summary judgment, a plaintiff "first must establish a *prima facie* case of discrimination based on race."  *Graham*, 230 F.3d at 38.  Toward that end, the plaintiff must show by a preponderance of the evidence that he (1) is a member of a protected class; (2) performed his job duties in a satisfactory manner; (3) endured an adverse employment action; and (4) the circumstances give rise to an inference of discriminatory action.  *Id.*  The plaintiff's burden at this stage is minimal.  *Zimmerman v. Associates First Capital Corp.,* 251 F.3d 376, 381 (2d Cir. 2011).

If the plaintiff establishes a *prima facie* case, the burden shifts to the employer "to articulate a legitimate, non-discriminatory reason for the employee's dismissal."  *Graham*, 230 F.3d at 38 (citations omitted).  If the employer proffers such a reason, the burden shifts back to the plaintiff to establish that "discrimination was the real reason for the employment action."  *Id.* (citations omitted).  The plaintiff here has "an opportunity to adduce admissible evidence that would be sufficient to permit a rational finder of fact to infer that the employer's proffered

reason is pretext for an impermissible motivation." *Howley v. Town of Stratford*, 217 F.3d 141, 150 (2d Cir. 2000).

A showing that the employer's proffered explanation is disingenuous, however, is not on its own sufficient to prevail; rather, the plaintiff must establish that "the challenged employment decision was more likely than not motivated, in whole or in part, by unlawful discrimination." *Id*. at 150 (internal citations omitted). Accordingly, a motion for summary judgment may be defeated where "a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." *Reeves v. Sanderson Plumbing Prod., Inc*., 530 U.S. 133, 148 (2000). "[T]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Id.* at 143 (internal citations omitted).

B. Disparate Treatment

WBOE moves for summary judgment on Bracey's disparate treatment, hostile work environment, and retaliation claims. With respect to the disparate treatment claim, WBOE argues that Bracey failed to proffer evidence that his terminations from Woodrow Wilson and Carrington were motivated by race because (i) neither amounted to an "adverse action;" (ii) there is insufficient evidence from which to infer discrimination; and (iii) WBOE's legitimate business reasons for terminating him were not pretextual. WBOE further argues that Bracey failed to demonstrate that WBOE's rejection of his applications for full-time teaching positions was discriminatory because (i) he was not qualified for such positions and (ii) no inference of discrimination can be drawn. I address each of those arguments in turn.

1. *Woodrow Wilson*

WBOE concedes that the first two elements of the *prima facie* case have been established: that Bracey, as a black man, belongs to a protected class, and that he is qualified for a substitute teaching position.  Mem. in Support of Mot. for Summ. J., Doc. No. 39-11, at 8. WBOE instead disputes that Bracey's termination amounted to an adverse employment action, and that such action occurred under circumstances giving rise to an inference of discrimination. *Id.*

In addition, Bracey has not disputed that WBOE set forth legitimate, non-discriminatory reasons for its decision to terminate Bracey, and instead focuses his argument on the pretext prong.  *See* Mem. in Opp. to Mot. for Summ. J., Doc. No. 47, at 12 ("[T]he proffered legitimate, non-discriminatory reasons for Bracey's termination from Woodrow Wilson and Carrington are pretextual.").

    a. *Prima Facie* Case

       (i)  <u>Bracey Suffered an Adverse Employment Action.</u>

"A plaintiff sustains an adverse employment action if he or she endures a 'materially adverse change' in the terms and conditions of employment."  *Galabya v. New York City Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000) (internal citations omitted).  To be "materially adverse," the "change in working conditions must be more disruptive than a mere inconvenience or an alteration of job responsibilities."  *Id.* (internal quotation marks and citations omitted). "Examples of materially adverse changes include termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation."  *Terry v. Ashcroft*, 336 F.3d 128, 138 (2d Cir. 2003) (internal quotation marks

omitted). "Reprimands, threats of reprimands, and excessive scrutiny of an employee, on the other hand, do not constitute materially adverse employment actions." *Oliphant v. Connecticut Dept. of Transp.*, 2006 WL 3020890, at *6 (D. Conn. 2006) (internal citations omitted).

Here, Bracey has adduced evidence that he was not paid for three school days during the period between his termination from Woodrow Wilson and his commencement at the Duggan School, and lost a total of $390.00 as a result.[5] That loss of wages is enough at this stage to establish a material change of conditions. *See Lovejoy–Wilson v. NOCO Motor Fuel, Inc.*, 263 F.3d 208, 223–24 (2d Cir. 2001) (holding that a one-week suspension without pay constitutes an adverse action because the plaintiff "at least suffered the loss of the use of her wages for a time"); *Page v. Connecticut Dep't of Pub. Safety, Div., of State Police*, 185 F. Supp. 2d 149, 157 (D. Conn. 2002) ("In this case, plaintiff was suspended for two days without pay. Thus, she lost wages. . . . These would be sufficient to support a jury's finding that she suffered adverse employment action."). Accordingly, I conclude that Bracey has sufficiently established that his termination at Woodrow Wilson constituted an adverse action.

### ii. Bracey Has Sufficiently Established an Inference of Discrimination.

"No one particular type of proof is required to show that Plaintiff's termination occurred under circumstances giving rise to an inference of discrimination." *Ofoedu v. St. Francis Hosp. & Med. Ctr.*, 2006 WL 2642415, at *14 (D. Conn. Sept. 13, 2006), *adhered to on reconsideration*, 2006 WL 8446750 (D. Conn. Nov. 6, 2006), *aff'd*, 282 F. App'x 930 (2d Cir. 2008) (internal citations omitted). An inference can be shown by demonstrating that the

---

[5] During the motion hearing, I directed Bracey's counsel to submit an affidavit setting forth the number of days without pay that passed between Bracey's termination at Woodrow Wilson and the start of his subsequent assignment at the Duggan School—information that was otherwise missing from the record. *See* Order, Doc. No. 52. Bracey did so the following week. *See* Aff., Doc. No. 53.

defendants "subjected him to disparate treatment, that is, treated him less favorably than a similarly situated employee outside his protected group." *Id*. (citing *Graham v. Long Island R.R.,* 230 F.3d 34, 38–40 (2d Cir. 2000)).  An inference can also be drawn from circumstances such as "the employee's continuing, after discharging the plaintiff, to seek applicants from persons of the plaintiff's qualifications to fill that position"; "the employer's criticism of the plaintiff's performance in ethnically degrading terms"; "its invidious comments about others in the employee's protected group"; "the more favorable treatment of employees not in the protected group"; or "the sequence of events leading to the plaintiff's discharge." *Ofoedu*, 2006 WL 2642415, at *14 (citing *Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 468 (2d Cir. 2001)).

WBOE argues that the circumstances do not give rise to an inference of discrimination because "he was able to accept additional substitute teaching assignments immediately thereafter and he did, in fact, accept another long-term assignment at the Duggan School."  Mem. in Support of Def's Mot. for Summ. J., Doc. No. 39-11, at 14.  That fact is irrelevant to the question of discriminatory intent and, as discussed, Bracey has established that he suffered a loss of wages following his termination.

Moreover, the record suggests that the teacher who immediately replaced Bracey was outside of Bracey's protected class, which is probative of discriminatory intent.  *Schnabel v. Abramson,* 232 F.3d 83, 87 (2d Cir. 2000) ("the fact that [the sixty-plus-year-old plaintiff bringing an ADEA claim] was replaced by a 31-year-old is sufficient to give rise to the inference that he was the victim of discrimination"); *Abrams v. Dep't of Pub. Safety*, 764 F.3d 244, 252 (2d Cir. 2014) (discerning inference of discrimination in Title VII discrimination case for failure to promote when the selected applicants were white).  During Parker's deposition, she testified that,

other than her and Bracey, no other African-American teacher worked at Woodrow Wilson in 2015.[6] Parker Deposition Tr., Doc. No. 49, at 306. She also stated that—other than Bracey and Trottman, the paraprofessional in Parker's classroom—Woodrow Wilson did not employ black teachers up until 2018. *Id.* at 322. Deeley likewise could not recall any other African-American teachers working at Woodrow Wilson in 2016. Deeley Deposition Tr., Doc. No. 49, at 34. Moreover, the record identifies an individual named Jaime Donahue as the teacher who immediately replaced Bracey, doc. no. 49, at 405; in his opposition, Bracey alleged that Donahue was white, which WBOE has not contested. Construing all inferences in favor of Bracey, I therefore conclude that a reasonable factfinder could find that Bracey was subsequently replaced by a substitute teacher outside of Bracey's protected class.

A reasonable juror could also find that Rosser's comment that Bracey was "not a good fit" reflects racial animosity. The Eastern District of New York articulated the standard for assessing discriminatory remarks at the *prima facie* stage:

> When assessing whether remarks are probative of discriminatory intent, the Second Circuit has held that "[t]he more a remark evinces a discriminatory state of mind, and the closer the remark's relation to the allegedly discriminatory behavior, the more probative that remark will be." *Tomassi v. Insignia Fin. Grp., Inc.,* 478 F.3d 111, 115 (2d Cir. 2007) (citation omitted). "The relevance of discrimination-related remarks . . . depend[s] . . . on their tendency to show that the decision-maker was motivated by assumptions or attitudes relating to the protected class." *Id.* at 116. In considering whether a remark is probative of discrimination or whether it is a non-probative "stray remark," a court should consider factors such as: "(1) who made the remark (i.e., a decision-maker, a supervisor, or a low-level co-worker); (2) when the remark was made in relation to the employment decision at issue; (3) the content of the remark (i.e., whether a reasonable juror could view the remark as discriminatory); and (4) the context in which the remark was made (i.e., whether it was related to the decision-making process)."

---

[6] The specific question posed by Bracey's counsel was: "Outside of Mr. Bracey in 2015 were you aware of any other African-American male teachers in the building?" Parker Testimony Tr., Doc. No. 49, at 306. Because Bracey worked at Woodrow Wilson during the 2015–2016 school year and was discharged in March 2016, a reasonable juror could construe that question, and therefore Parker's response, as in reference to the 2015 academic year, rather than the 2015 calendar year.

*Sethi v. Narod*, 12 F. Supp. 3d 505, 538–39 (E.D.N.Y. 2014).

In the case at bar, Rosser remarked that Bracey was not a good fit shortly before she terminated him, which weighs in favor of a finding of discriminatory intent. The Second Circuit addressed similar comments in *Abrams v. Dep't of Pub. Safety*, 764 F.3d 244 (2d Cir. 2014), a case involving a Title VII discrimination claim brought by a black detective who was not selected for a transfer. The *Abrams* Court vacated the district court's order granting summary judgment to the defendants; in doing so, the court relied heavily on comments made by interviewers that the detective "did not fit in" and that a different applicant was a "better fit." *Id.* at 253.

Although the Second Circuit considered those comments in the context of the third *McDonnell Douglas* factor of pretext, the Court's underlying reasoning applies equally to this analysis: "the phrasing 'better fit' or 'fitting in' *just might* have been about race; and when construing the facts in a light most favorable to the non-moving party, those phrases, even when isolated, could be enough to create a reasonable question of fact for a jury." *Id.* (emphasis in original).

It is also noteworthy that, when presented with the list of students whose parents had allegedly complained, Dr. Fragaeus, the principal at the Duggan School, remarked that it was "very unusual" for a principal to wait until multiple complaints accumulated before addressing them, explaining that "if you have complaint from a parent or child, you deal with it right away, you don't wait until there are 10 complaints." Fragaeus Deposition Tr., Doc. No. 49, at 266–67. Parker conveyed similar sentiments. Parker Deposition Tr., Doc. No. 49, at 316 (responding "no" to the question of "[h]ave you ever in the course of your work at the Waterbury Board of Education seen occasions in which a group of parents had complaints against one teacher that

were addressed at one time?").  Deviations from procedure can often give rise to inferences of impermissible motivation.  *See Nurse v. Lutheran Med. Ctr.*, 854 F. Supp. 2d 300, 317 (E.D.N.Y. 2012) ("It is well settled that departures from procedural regularity can create an inference of discriminatory intent, sufficient to establish a *prima facie* case of employment discrimination.") (internal quotation marks and citations omitted).  Accordingly, that irregularity, too, supports an inference of discrimination.

      b.  Bracey Has Established Pretext.

To demonstrate pretext, a plaintiff must show either that "a discriminatory reason more likely motivated the employer or . . . that the employer's proffered explanation is unworthy of credence."  *Ofoedu*, 2006 WL 2642415, at *16 (citing *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 256 (1981)).  Here, I conclude that Bracey has adequately challenged the credibility of Rosser's proffered explanation that she terminated Bracey because of the complaints from parents that were raised to her and Deeley about Bracey stepping away from the standard curriculum.

First, Bracey has proffered evidence suggesting that no such complaints were made by parents in the first instance.  At Deeley's deposition, she testified that she could not recall any conversations with parents that conveyed concerns about Bracey or his teaching practices in particular, nor could she recall any conversations with students or employees.  Deeley Deposition Tr., Doc. No. 49, at 38–45.  Deeley also did not recall any general problems with Bracey, or even preparing the list of names for Rosser or why she did so.  *Id*. at 25, 51–52.  Her testimony further suggests that, because she was not in his classroom and because it was not "[her] role," she did not know whether he was teaching subjects such as the civil war or slavery. *Id*. at 37, 42.

Moreover, Rosser testified that she did not directly receive any complaints from parents, and that only one student directly told her that Bracey "wasn't teaching the subjects" and that he "wasn't comfortable with what [Bracey] was talking about." Rosser Deposition Tr., Doc. No. 49, at 382–83. She further testified that there were no written complaints to that effect. *Id*. at 378.

Even if complaints about Bracey were raised, the evidence indicates that Rosser took no steps to address those issues with Bracey or otherwise allow Bracey to remedy the situation before terminating him. Bracey Deposition Tr., Doc. No. 49, at 117, 199 (testifying that he had no discussions with Rosser about his job performance, the curriculum, or his conduct of the class, nor had he received any warnings in advance). Although Rosser testified that Deeley counselled Bracey to follow the curriculum, at this stage I must resolve all ambiguities and draw all reasonable inferences against the moving party.

Balancing all factors, and considering the facts in the light most favorable to the non-moving party, I conclude that Bracey has raised a question that should be presented to a jury. I therefore **deny** summary judgment with respect to his Woodrow Wilson discriminatory termination claim.

2. *Carrington*

   a. *Prima Facie* Case

WBOE again concedes that the first two elements of the *prima facie* case have been met here: that Bracey belongs to a protected class, and that he is qualified for a substitute teaching position. Mem. in Support of Mot. for Summ. J., Doc. No. 39-11, at 8. Therefore, the issues in dispute are whether Bracey's termination from Carrington after a single day of work constituted

an adverse employment action, and whether such action occurred under circumstances giving rise to an inference of discrimination.

### i. The Termination from Carrington Qualified as an Adverse Action.

Unlike Bracey's termination from Woodrow Wilson, his termination from Carrington was not quickly followed by a reassignment to another school. Quite the opposite, he has not since been employed by the WBOE. Because Bracey has therefore experienced, at the least, a loss of pay, he consequently suffered a material change in employment conditions. *See Lovejoy–Wilson*, 263 F.3d at 223–24; *Page*, 185 F. Supp. 2d at 157.

I am not persuaded by WBOE's argument that Bracey did not suffer an adverse employment action after his termination from Carrington because (1) "he still remained eligible for both short and long-term substitute assignments throughout the end of the 2016–2017 school year," and (2) he instead "chose not to avail himself of the very simple online AESOP program to check for and accept readily available substitute teaching positions within the City of Waterbury." Mem. in Support of Mot. for Summ. J., Doc. No. 39-11, at 10. That argument is better suited to support a failure to mitigate damages defense. Moreover, WBOE has presented no evidence that any of the "readily available substitute teaching positions" were similar to the position that Bracey held, albeit briefly, at Carrington.

Further, in his affidavit, Bracey maintains that, although he may have had access to the AESOP/FRONTLINE system, he was not "simply able to pick and choose" the teaching assignments that he wanted because they were in large part determined by the school's principal or by Human Resources at the District's central office. Bracey Aff., Doc. No. 49, at 409. He further asserts that, during the 2015–2016 and 2016–2017 school years, he "availed [himself] for all positions on the AESOP/FRONTLINE system for which [he] was qualified" and would have

"gladly . . . accepted any long-term substitute positions" after his assignment at Carrington concluded. *Id*. at 410. Accordingly, construing the facts in the light most favorable to Bracey, I conclude that there is a triable issue regarding whether Bracey suffered from a materially adverse change once his position at Carrington ended.

### ii. Bracey Has Not Established an Inference of Discrimination.

Bracey has not presented any facts from which a reasonable jury could draw a permissible inference of discriminatory intent with respect to his termination from Carrington. *Ofoedu*, 2006 WL 2642415, at *19 ("[a] plaintiff in a discrimination case must do more than merely raise an issue of fact regarding the validity of the employer's proffered explanation"). For instance, Bracey has not presented evidence indicating that he was replaced by a teacher outside of his protected class at Carrington, that non-black employees were treated more favorably, or that Renna harbored any racial hostilities toward people of color or Bracey in particular. *See Ofoedu*, 2006 WL 2642415, at *22.

Bracey's belief that Renna discriminated against him is insufficient, *Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 456 (2d Cir. 1999*), as amended on denial of reh'g* (Dec. 22, 1999) (internal quotation marks and alterations omitted), as is the fact that the district was subject to a mandate to hire more minority teachers. Bracey has offered no authority demonstrating the relevance of such a mandate, and, in my view, such a mandate seems to weigh against a finding of discrimination because it suggests that decision-makers would be more willing to hire, and ultimately retain, teachers of color.

For those reasons, Bracey's claim that he was discriminated against at Carrington cannot stand. I therefore **grant** summary judgment to the WBOE with respect to the Carrington termination.

3. *Other Applications*

Bracey has failed to adequately show that his applications to other teaching positions were rejected on the basis of his race. In the failure to hire context, a plaintiff must establish that: "(1) she is a member of a protected class; (2) she applied and was qualified for a job for which the employer was seeking applicants; (3) she suffered an adverse employment action; and (4) the circumstances surrounding that action permit an inference of discrimination." *Williams v. R.H. Donnelley, Corp.*, 368 F.3d 123, 126 (2d Cir. 2004) (citing *McDonnell Douglas Corp.,* 411 U.S. at 802).

WBOE concedes that Bracey has satisfied two of the four elements of his *prima facie* case: (1) that he belongs to a protected class and (2) that he suffered an adverse employment action with respect to the permanent teaching positions. Mem. in Support of Mot. for Summ. J., Doc. No. 39-11, at 18. Accordingly, my analysis will focus on whether Bracey was qualified for the full-time teaching positions and whether the circumstances give rise to an interference of discrimination.

It is well-settled that "the qualification necessary to shift the burden to [the] defendant for an explanation of the adverse job action is minimal; [the] plaintiff must show only that he 'possesses the basic skills necessary for performance of [the] job.'" *See Slattery v. Swiss Reinsurance Am. Corp.,* 248 F.3d 87, 92 (2d Cir. 2001), *as amended* (June 6, 2001) (internal citations omitted). Here, Bracey held a master's degree in elementary education from the University of Bridgeport and had a valid K-6 Connecticut state teaching certification. In light of the low threshold, WBOE's arguments that Bracey performed poorly on his interviews, was not familiar with the common core curriculum nor the State of Connecticut Education requirements, and was deficient in classroom management and interpersonal skills, are unavailing.

Accordingly, I conclude that Bracey has met his minimal burden of proving that he possessed the basic skills necessary to perform the duties of a full-time teacher.

Wholly lacking from the record, however, is an indication of discriminatory intent. Noreen Buckley, who interviewed Bracey on July 7, 2016, explained that Bracey was not offered a full-time position as an elementary school teacher because he had "poor responses to the questions asked during his interview, . . . scored very low in his overall interview, was not knowledgeable of the Common Core standards, lesson design, classroom management and did not display strong parent engagement skills." Buckley Aff., Doc. No. 39-6, at ¶ 6. Pamela Baim, who interviewed Bracey for full-time elementary school teaching positions with the John G. Gilmartin School and Generali Elementary School on July 11, 2016, stated that Bracey was not offered a position at either school because he was not knowledgeable about Common Core standards nor the State of Connecticut educational standards. Baim Aff., Doc. No. 39-5, at ¶ 2. Moreover, he was reported to have had poor classroom management and to have refused help when he had previously served as a substitute teacher at Generali Elementary School. *Id*. at ¶¶ 4, 5. Diurca Tomasella and Mary Perugini, who interviewed Bracey at the career fair on April 26, 2017, both assigned him 13 out of a possible 25 points as a result of his interview. Def's Local Rule 56(a)1 Statement of Facts, at ¶¶ 44, 45.

Bracey has not attributed discriminatory comments or conduct to any of those decision-makers, nor has he asserted that those positions were provided to teachers outside of his protected class. Lastly, as mentioned earlier, Bracey's belief that he was discriminated against will not suffice. *Ofoedu*, 2006 WL 2642415, at *19. For those reasons, I conclude that a reasonable trier of fact could not find that WBOE acted unfavorably upon Bracey's applications

because of discriminatory animus.  I therefore **grant** summary judgment to the WBOE with respect to Bracey's failure to hire claim.

C.  Hostile Work Environment

WBOE further argues that Bracey has not come forward with evidence of continuous and pervasive racial animus in the workplace to support his hostile work environment claim.  I agree.

In order to prevail on a hostile work environment claim, a plaintiff must show that "the harassment was 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'"  *Alfano v. Costello*, 294 F.3d 365, 373 (2d Cir. 2002) (quoting *Perry v. Ethan Allen, Inc.*, 115 F.3d 143, 149 (2d Cir. 1997)).  "This test has objective and subjective elements: the misconduct must be 'severe or pervasive enough to create an objectively hostile or abusive work environment,' and the victim must also subjectively perceive that environment to be abusive."  *Id.* at 374 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)).

Among the factors to weigh when determining whether an environment is sufficiently hostile are "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."  *Harris*, 510 U.S. at 23.  "As a general rule, incidents must be more than 'episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive.'"  *Alfano*, 294 F.3d at 374 (quoting *Perry*, 115 F.3d at 149).

Bracey rests his hostile work environment claim on Rosser's "stray remarks," the dearth of minority representation among WBOE teachers, and the "unsubstantiated allegations" that Bracey was not complying with the WBOE curriculum.  Mem. in Opp. to Mot. for Summ. J., Doc. No. 47, at 22.  The six remarks and actions that Bracey has identified as indicative of

Rosser's discriminatory intent—which span an unspecified time and most of which Bracey did not personally hear or experience—are too scattered to support Bracey's hostile work environment claim. *See Aulicino v. N.Y. City Dep't of Homeless Servs.*, 580 F.3d 73, 83 (2d Cir. 2009) ("For racist comments, slurs, and jokes to constitute a hostile work environment . . . there must be more than a few isolated incidents of racial enmity.") (internal citations omitted).

The allegations that Bracey was not following the curriculum, as well as the lack of minority teachers, also do not establish a workplace "permeated" with discriminatory intimidation that was so severe and pervasive as to alter Bracey's working conditions. I therefore **grant** WBOE's motion with respect to Bracey's hostile work environment claim.

### D. Unlawful Retaliation

According to Bracey, WBOE did not hire him for a permanent position as a result of his January 27, 2017 EEOC complaint. That claim is without merit.

Retaliation claims under Title VII follow the same *McDonnell Douglas* burden shifting framework. *See El Sayed v. Hilton Hotels Corp.*, 627 F.3d 931, 932 (2d Cir. 2010). To establish a *prima facie* case of retaliation, a plaintiff must demonstrate that: "(1) she was engaged in protected activity; (2) the employer was aware of that activity; (3) the employee suffered a materially adverse action; and (4) there was a causal connection between the protected activity and that adverse action." *Kelly v. Howard I. Shapiro & Assocs. Consulting Engineers, P.C.,* 716 F.3d 10, 14 (2d Cir. 2013) (internal citations omitted).

If the plaintiff meets his *prima facie* burden, "the burden shifts to the employer to demonstrate that some legitimate, non-retaliatory reason for the employment action." *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 845 (2d Cir. 2013) (internal citations omitted). If the employer makes such a showing, "[t]he burden shifts back to the plaintiff to establish, through

either direct or circumstantial evidence, that the employer's action was, in fact, motivated by discriminatory retaliation." *Gomez v. Metro. Dist.*, 10 F. Supp. 3d 224, 235 (D. Conn. 2014) (internal citations omitted).

Here, Bracey has clearly met the first two elements of his *prima facie* case: his formal complaint with the EEOC is "protected activity," and he experienced adverse action in the form of a failure to hire.

With respect to causation, that element can be shown either: "(1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant." *Hicks v. Baines*, 593 F.3d 159, 170 (2d Cir. 2010) (internal citations omitted). Absent more direct evidence, courts will often look to temporal proximity between the complaint and the alleged retaliatory action at the *prima facie* stage. *See Abrams v. Dep't of Pub. Safety*, 764 F.3d 244, 254 (2d Cir. 2014). The Second Circuit allows courts to exercise judgment about the permissible inferences that may be drawn from temporal proximity. *See Smith v. Town of Hempstead Dep't of Sanitation Sanitary Dist. No. 2*, 798 F. Supp. 2d 443, 458 (E.D.N.Y. 2011) (comparing *Espinal v. Goord*, 558 F. 3d 119, 129 (2d Cir. 2009) (five-month period not too long with showing that defendants had deliberately waited to initiate a beating on prisoner) *with Hollander v. American Cyanamid Co.*, 895 F.2d 80, 85–86 (2d Cir. 1990) (three-month period too long without more evidence of retaliation)).

Bracey rests his retaliation claim on the temporal proximity between the filing of his EEOC complaint and his "non-hire" in 2017 and 2018, during which time his Applitrack application was active. Mem. in Opp. to Mot. for Summ. J., Doc. No. 47, at 25. Bracey,

however, has not cited to any evidence indicating when any such vacancies existed. Accordingly, the evidence is insufficient to establish temporal proximity.

Moreover, with respect to the vacant positions to which he directly applied, the only applications that Bracey submitted after filing his EEOC complaint were in May 28, 2017, five months later. Because Bracey has produced no other evidence suggestive of retaliation, I conclude that the five-month period between the EEOC complaint and the applications is insufficient for the retaliation claim to survive summary judgment. For those reasons, I conclude that a reasonable juror could not find a causal connection between the EEOC complaint and any adverse action.

E. Due Process

Toward the end of his brief, Bracey appears to advance a due process claim, arguing that "the Board did not afford the plaintiff due process on two occasions when it failed to give proper notice to him that his long-term position with Woodrow Wilson and Carrington were being terminated." Mem. in Opp. to Mot. for Summ. J., Doc. No. 47, at 26. Although a due process claim was not raised in his amended complaint, I will address it here. *Thomas v. Egan*, 1 F. App'x 52, 54 (2d Cir. 2001) ("[I]t is inappropriate to raise new claims for the first time in submissions in opposition to a summary judgment motion.").

In deciding whether a due process deprivation occurred, a court "must first identify the property interest involved. Next, [it] must determine whether the plaintiff received constitutionally adequate process in the course of the deprivation." *Gugliotti v. Miron*, 2010 WL 3025223, at *4 (D. Conn. July 30, 2010) (citing *O'Connor v. Pierson*, 426 F.3d 187, 196 (2d Cir. 2005)). To identify the property interest implicated, courts assess "whether some source of law other than the Constitution, such as a state or federal statute, confers a property right on the

plaintiff." *Taravella v. Town of Wolcott*, 599 F.3d 129, 133 (2d Cir. 2010). "Once such a property right is found, [courts] must determine whether that property right 'constitutes a property interest for purposes of the Fourteenth Amendment.'" *Id.* (internal citations omitted).

"In the employment context, a property interest arises only where the state is barred, whether by statute or contract, from terminating (or not renewing) the employment relationship *without cause*." *Id.* at 134 (emphasis in original) (internal citations omitted). "Under Connecticut law, employment is at-will by default, and parties must specifically contract a right to be terminated only for cause." *Id.* Because Bracey has proffered no evidence of any such contract, his due process claim fails.

IV.     **Conclusion**

For the foregoing reasons, I **deny** WBOE's motion for summary judgment with respect to Bracey's discrimination claim arising out of his termination from Woodrow Wilson but **grant** it with respect to the remaining claims.

So ordered.

Dated at Bridgeport, Connecticut, this 5th day of March 2020.

/s/ STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge